UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SP PLUS CORPORATION | CIVIL ACTION NO. 2:16-cv-2474 |
| VERSUS | MAGISTRATE JUDGE |
| IPT, LLC, d/b/a PAYLOCK | |

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff SP Plus Corporation ("SP"), which files this complaint against Defendant IPT, LLC, d/b/a PayLock ("PayLock"). Based on information and belief, SP respectfully avers as follows:

## PARTIES

1. Plaintiff SP Plus Corporation is a corporation organized under the laws of Delaware with its principal place of business in Chicago, Illinois.

2. Defendant IPT, LLC, d/b/a PayLock is a limited liability company organized under the laws of New York, and registered in New York, New York. Upon information and belief, none of the members of IPT, LLC, d/b/a PayLock are domiciled in Delaware or Illinois.

## JURISDICTION

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 1332, 1338(a), 2201 and 2202 because this action arises out of the patent laws of the United States, Title 35 of the United States Code, and seeks relief under the Federal Declaratory Judgment Act.

4. Defendant PayLock is subject to the Court's personal jurisdiction because, on information and belief, Defendant has specifically solicited and conducted business in the City of New Orleans, Louisiana, which is within this judicial district. PayLock has also directed infringement accusations in this District.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between SP and PayLock, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

6. Venue is proper and lies in this Court pursuant to 28 U.S.C. 1391(b), and § 1400(b) because Defendant engages in business activity in this District as set forth above, and a substantial part of the events or omissions giving rise to SP's claims occurred in this judicial district. Specifically, as a result of PayLock's acts and omissions, which were targeted at SP in this district, SP has suffered damages in this judicial district.

## FACTUAL ALLEGATIONS

7. On or around May 16, 2014, non-party Professional Account Management, LLC ("PAM") entered into a contract with the City of New Orleans, Louisiana (the "City") for "Curbside Management & Enforcement: Parking Ticket Processing" (the "Prime Contract").

8. On or around July 14, 2014, SP entered into a subcontract agreement with PAM (the "Subcontract"), pursuant to the Prime Contract.

9. The Subcontract provides, *inter alia*, that SP will provide certain services to the City, particularly including the placement of immobilizing devices ("boots") on certain automobiles that are responsible for municipal parking violations in the City ("booting operations"), pursuant to the Prime Contract between PAM and the City.

10. Prior to SP's operation of booting enforcement in the City, PayLock, by virtue of a subcontract with the City's then prime contractor, provided booting operations for the City beginning in or around the year 2008.

11. To comply with its duty to provide "booting operations" to the City under the Subcontract, SP purchased approximately 108 of "Titan Grip" parking enforcement "boots" from Universal Boot, Inc. ("Universal"). Universal delivered those boots (the "Titan Grip Boots") to SP.

12. The Titan Grip Boots are manufactured by Team Manufacturing, Inc. ("Team").

13. The U.S. Patent and Trademark Office issued patent number 8,733,141 to James Cheatham, Vice President of Engineering at Team, claiming the Titan Grip Boot, on or around May 27, 2014.

14. Upon receipt of the Titan Grip Boots, SP began using the boots for parking enforcement in the City of New Orleans.

15. The Titan Grip Boot contains a "self-release" mechanism, which functions in the parking enforcement field as follows:

    a. First, an SP employee tasked with parking enforcement determines whether a parked vehicle may be "booted" due to outstanding municipal parking fines.

    b. If the vehicle is subject to being "booted" due to outstanding parking fines, that SP employee affixes the Titan Grip Boot to the vehicle, rendering it inoperable.

    c. The SP employee leaves written instructions regarding removal of the Titan Grip Boot on the booted vehicle.

  d. The Titan Grip Boot contains a mechanism that allows an operator of a vehicle to "self-release." The mechanism is similar to that found on some styles of padlocks or other locking mechanisms, in that it contains three "tumblers" bearing different numbers. To unlock the mechanism, a user must move the three tumblers to the correct numerical code, and release.

  e. The written instructions instruct the operator of the vehicle to dial a telephone number, whereby the vehicle operator will be connected to an SP employee who can assist in the process of removing the Titan Grip Boot.

  f. Upon payment of the outstanding fines (and a deposit to secure the return of the Titan Grip Boot), the SP employee will communicate the self-release "code" to the operator of the vehicle via telephone.

  g. The operator of the vehicle can then input the code via the numerical tumblers as described above, and release the Titan Grip Boot.

  h. The operator of the vehicle is instructed to return the Titan Grip Boot to a designated location. Upon return of the Titan Grip Boot, the operator of the vehicle receives a refund of the deposit.

16. From approximately September 2014 through February 2016, SP used the Titan Grip Boots in the City without any claims that the Titan Grip Boot infringed on any other patent.

17. On or around February 4, 2016, PAM received a letter from counsel for PayLock, which alleged that PayLock was the holder of U.S. Patent Nos. 7,950,570 (the "'570 patent") and 7,988,046 (the "'046 patent"), and that the booting operations in the City infringed upon "at least" claim 9 of the '570 patent, and claim 1 of the '046 patent.

18. PayLock began using its self-releasing boot (which is the subject of '570 and '046 patents) in or around the year 2006.

19. On May 31, 2011, the U.S. Patent and Trademark Office issued the '570 patent.

20. On August 2, 2011, the U.S. Patent and Trademark Office issued the '046 patent.

21. On August 28, 2015, the '570 patent and the '046 patent expired because the requisite fees for maintenance of those patents were not paid by PayLock.

22. The '570 and '046 patents remained expired until December 1, 2015, when PayLock paid the delinquent fees.

23. On or around February 19, 2016, SP received PayLock's February 4, 2016 letter.

24. PayLock's letter of February 4, 2016 claims that the booting operations in the City of New Orleans infringe the '570 and '046 patents.

25. PayLock's letter of February 4, 2016 indicates that it visited the City of New Orleans' website regarding booting operations, and that it called the local, New Orleans, Louisiana telephone number on that website provided for "pay and release" of the Titan Grip Boot.

26. PayLock's letter of February 4, 2016 indicates that after dialing the local, New Orleans telephone number listed on the City of New Orleans' website regarding booting operations, it spoke to a customer service representative, who explained the boot release process over the telephone.

27. PayLock attached to its February 4, 2016 letter a copy of the Prime Contract between PAM and the City.

28. PayLock attached to its February 4, 2016 letter a portion of the Subcontract between PAM and SP.

29. PayLock attached to its February 4, 2016 letter invoices from PAM to the City for, *inter alia*, booting operations.

30. PayLock attached to its February 4, 2016 letter at least a portion of the documents comprising the '570 and '046 patents.

31. PayLock's letter of February 4, 2016 alleging that the booting operations for the City infringe the '570 patent constitutes an affirmative act by PayLock related to the enforcement of the '570 patent in New Orleans, Louisiana.

32. PayLock's letter of February 4, 2016 alleging the booting operations for the City infringe the '046 patent constitutes an affirmative act by PayLock related to the enforcement of the '046 patent in New Orleans, Louisiana.

33. Contrary to PayLock's assertions, the booting operations in New Orleans, Louisiana have not infringed (and do not currently infringe) any claim of the '570 patent.

34. Contrary to PayLock's assertions, the booting operations in New Orleans, Louisiana have not infringed (and do not currently infringe) any claim of the '046 patent.

35. Furthermore, contrary to PayLock's contentions, one or more claims of the '570 patent are invalid for failing to satisfy one or more conditions of patentability under 35 U.S.C. § 101, 102, 103, and/or 112.

36. Moreover, contrary to PayLock's contentions, one or more claims of the '046 patent are invalid for failing to satisfy one or more conditions of patentability under 35 U.S.C. § 101, 102, 103, and/or 112.

37. Based on the communication from PayLock asserting the '570 and '046 patents, SP has reasonable apprehension that PayLock will initiate litigation against SP. Further, based on at least the facts asserted herein, the dispute between SP and PayLock regarding the

alleged infringement and validity of the '570 and '046 patents is real, substantial, definite, and concrete.

38. On or around February 26, 2016, and out of an abundance of caution and specifically denying infringement of either the '570 or '046 patents, SP ceased all use of the "self-release" function of the Titan Grip Boot.

39. In lieu of using the "self-release" function of the Titan Grip Boot, on or around February 26, 2016, SP began providing staff twenty-four (24) hours a day, seven (7) days a week, in order to manually unlock the Titan Grip Boots as necessary.

## COUNT I – DECLARATION OF NON-INFRINGEMENT OF THE '570 PATENT

40. SP incorporates by reference and re-alleges all of the allegations above.

41. As a result of the above-described communications from PayLock, SP has reasonable apprehension that PayLock will commence action against it for infringement of the '570 patent.

42. SP has not infringed, and is not currently infringing, directly or indirectly, any valid and enforceable claim of the '570 patent.

43. An actual and justiciable controversy exists between PayLock and SP as to the validity of the '570 patent. The controversy is substantial, immediate, and real.

44. Upon information and belief, and as will likely be supported by evidence after reasonable opportunity for further investigation and discovery, the `570 patent is invalid, null, void, and/or unenforceable for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C., including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

45. SP is entitled to a judgment declaring that the '570 patent is invalid.

## COUNT II – DECLARATION OF NON-INFRINGEMENT OF THE '046 PATENT

46. SP incorporates by reference and re-alleges all of the allegations above.

47. As a result of the above-described communications from PayLock, SP has reasonable apprehension that PayLock will commence action against it for infringement of the '046 patent.

48. SP has not infringed, and is not currently infringing, directly or indirectly, any valid and enforceable claim of the '046 patent.

49. An actual and justiciable controversy exists between PayLock and SP as to the validity of the '046 patent. The controversy is substantial, immediate, and real.

50. Upon information and belief, and as will likely be supported by evidence after reasonable opportunity for further investigation and discovery, the `046 patent is invalid, null, void, and/or unenforceable for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C., including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

51. SP is entitled to a judgment declaring that the '046 patent is invalid.

## COUNT III – LOUISIANA UNFAIR TRADE PRACTICES ACT

52. SP incorporates by reference and re-alleges all of the allegations above.

53. Pursuant to Louisiana law, unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

54. PayLock has engaged in such unlawful conduct including but not limited to alleging infringement related to the booting operations in the City of New Orleans, Louisiana, in an attempt to disrupt SP's business.

55. PayLock's conduct violates the Louisiana Unfair Trade Practices Act.

56. As a direct and proximate result of the PayLock's violations, SP has suffered and continues to suffer damages.

57. SP is therefore entitled to damages, attorneys' fees, and costs under Louisiana Revised Statute Annotated § 51:1401 *et. seq.*

### COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS

58. SP incorporates by reference and re-alleges all of the allegations above.

59. PayLock has made false and malicious statements and/or representations about SP relating to alleged infringement of the '570 and '046 patents in an effort to intentionally interrupt SP's business.

60. As a direct and proximate result of PayLock's violations, SP has suffered and continues to suffer damages.

61. SP is therefore entitled to damages, attorneys' fees, and costs under Louisiana Civil Code article 2315.

### PRAYER FOR RELIEF

**WHEREFORE**, SP respectfully requests that the Court:

A. Find and declare that SP does not infringe, directly or indirectly, any valid and enforceable claim of the '570 patent.

B. Find and declare that SP does not infringe, directly or indirectly, any valid and enforceable claim of the '046 patent.

C. Find that the `570 patent is invalid, null, void, and/or unenforceable for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C., including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

D.  Find that the `046 patent is invalid, null, void, and/or unenforceable for failure to comply with the conditions and requirements for patentability specified in Title 35 U.S.C., including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

E.  Find that SP is entitled to relief under the Louisiana Unfair Trade Practices Act, and grant SP such relief as is appropriate;

F.  Find that SP is entitled to relief under its claim for Tortious Interference with Contract and Business Relations, and grant SP such relief as is appropriate; and

G.  Grant SP all other relief as this Court determines to be just and equitable.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:  */s/ Christopher K. Ralston*
   Christopher K. Ralston, (Bar #26706)
   Lindsay Calhoun, (Bar #35070)
   Arthur R. Kraatz, (Bar #35194)
   Canal Place | 365 Canal Street, Suite 2000
   New Orleans, Louisiana 70130-6534
   Telephone: 504-566-1311
   Telecopier: 504-568-9130
   Email:  ralstonc@phelps.com
      lindsay.calhoun@phelps.com
      arthur.kraatz@phelps.com

**ATTORNEYS FOR SP PLUS CORPORATION**