UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SP PLUS CORPORATION                                    CIVIL ACTION

v.                                                     NO. 16-2474

IPT, LLC, d/b/a PAYLOCK                                SECTION "F"

ORDER AND REASONS

Before the Court are two interrelated motions: (1) the
plaintiff's motion to preliminarily enjoin the defendant from
pursuing a related lawsuit in New Jersey; and (2) the defendant's
motion to dismiss, stay, or transfer this declaratory action. For
the reasons that follow, the plaintiff's motion is GRANTED. The
defendant's motion is GRANTED in part and DENIED in part: in
particular, the motion is granted in that the plaintiff's state
law claims are dismissed, but it is denied insofar as the defendant
seeks dismissal of the plaintiff's declaratory claims under
federal patent law and denied insofar as it seeks to stay or
transfer this declaratory action.

**Background**

This declaratory judgment action arises out of the assertion
by defendant IPT, LLC ("Paylock") that the employment of "self-

1

release" parking boots in the City of New Orleans ("City")
infringes upon two of Paylock's patents.

On May 16, 2014, the City awarded a prime contract to
Professional Account Management, LLC ("PAM") to handle the City's
parking ticket processing operations.  Two months later, on July
17, 2014, PAM subcontracted with SP Plus Corporation, the plaintiff
in this action.  The subcontract binds SP Plus to assist PAM in
overseeing "vehicle immobilization/release functions," including
the placement of immobilizing "boots" on vehicles parked illegally
or belonging to a driver with outstanding fines or violations.  To
remove the boot from an immobilized vehicle, the driver must pay
a fee as well as any outstanding fines.

As a means of facilitating convenient and expeditious boot
removal, SP Plus implemented a "self-release" option on its boots.
This self-release option allows drivers of booted vehicles to call
a telephone number left by SP Plus personnel in order to receive
a code that allows them to immediately unlock and remove the boot
before returning it to a designated drop-off site. SP Plus
continued to use self-release boots in fulfilling its booting
obligations under the subcontract with PAM for more than 16 months.

Paylock is the holder of U.S. Patent No. 7,950,570, titled
"Parking Environment Management System and Method," and U.S.
Patent No. 7,988,046, titled "Vehicle Violation Enforcement System

2

and Method" (the "570" and "046" patents). Both the 570 and 046 patents describe the technology involved in and design specifications for the implementation and management of self-release booting systems. By letter dated February 4, 2016, Paylock wrote PAM that the ongoing self-release booting operations in New Orleans infringed at least claim 9 of the 570 patent and claim 1 of the 046 patent. The letter threatened suit unless PAM immediately ceased its infringing activities and confirmed to Paylock within a month that its self-release booting days were over. The February 4 letter made no mention of SP Plus.

SP Plus claims to have learned about Paylock's letter on or around February 19, 2016. Out of a purported "abundance of caution," SP Plus discontinued its self-release booting operations a week later. On Paylock's March 4 response deadline, SP Plus identified itself to Paylock as PAM's subcontractor, and requested an additional 30 days to investigate and respond to Paylock's allegations. PAM asked for the same extension, which Paylock subsequently granted.

Instead of responding to Paylock, SP Plus filed a declaratory judgment action in this Court on March 25, 2016. SP Plus seeks declarations of invalidity and non-infringement: alleging that both the 570 and 046 patents are facially invalid under the requirements for patentability in 35 U.S.C. § 101, et seq., and

that its conduct infringes upon none of the patents' claims, anyway. In addition, SP Plus accuses Paylock of engaging in tortious interference with its contract and business relations and violating the Louisiana Unfair Trade Practices Act (LUTPA). According to SP Plus, Paylock -- who once provided booting services for the City and bid on the prime contract ultimately awarded to PAM -- threatened a patent infringement suit purely as a means of hampering PAM and SP Plus's business.

When Paylock expressed a desire to attempt to resolve the dispute before embroiling themselves in litigation, SP Plus requested and received from this Court an extension to serve Paylock with the suit. After several months of fruitless negotiations, SP Plus did finally serve Paylock with the declaratory judgment action on August 26, 2016. Just one day before, on August 25, Paylock had filed an infringement suit against PAM—and PAM alone—in the United States District Court for the District of New Jersey, captioned IPT LLC d/b/a Paylock IPT LLC v. Professional Account Management, LLC, No. 3:16-cv-5200. In the New Jersey complaint, Paylock alleges that PAM, with either full awareness of or willful blindness to the existence of Paylock's patents, knowingly and intentionally infringed the 570 or 046 patents. Paylock in the New Jersey lawsuit additionally accuses PAM of inducing the City into infringement, selling and offering for sale the self-release booting operations, and

4

"contracting with others and instructing others in connection with the infringement." Finally, paragraph 11 of the New Jersey complaint includes the allegation that PAM "has contacted multiple municipalities in the United States with the intent of engaging in booting operations."[1]

SP Plus now moves for this Court to enjoin Paylock from prosecuting its New Jersey lawsuit under the "first-to-file" rule. In addition to responding to SP Plus's Motion for Preliminary Injunction, Paylock moves to dismiss SP Plus's declaratory judgment action as well as its state law claims. In the alternative, Paylock asks that this Court stay this case or transfer it to New Jersey.

## Discussion

Distinct, albeit highly similar, legal standards govern the granting of a preliminary injunction against a pending suit in another district court and of a motion for the dismissal, stay, or transfer of a declaratory judgment action. Much of the controlling jurisprudence, in fact, involves declaratory actions of non-infringement that were filed prior to infringement actions. Thus,

---

[1] Notably, Paylock does not specifically allege whether PAM offered to engage in *self-release* booting operations for those other municipalities. Indeed, counsel for Paylock admitted at oral argument that Paylock does not allege nationwide infringement in the New Jersey lawsuit, but makes clear that any such claims could be advanced later.

in order to explain with as much cogency and as little redundancy
as possible how the Court reached its conclusions on what are
essentially cross-motions -- with the net effect restricting this
litigation to the federal patent claims in SP Plus's declaratory
action in this Court -- the Court will explain how the relevant
law *permits* the Court to grant a preliminary injunction over the
New Jersey action.   The subsequent analysis of the motion to
dismiss, stay, or transfer this declaratory action illustrates why
the Court *should* grant the injunction and proceed with SP Plus's
declaratory action in this Court.

I.

Because both SP Plus's declaratory action and Paylock's
infringement action raise issues under federal patent law, the
Federal Circuit retains exclusive appellate jurisdiction over both
actions.   See USPPS, Ltd. v. Avery Dennison Corp., 647 F.3d 274,
277 (5th Cir. 2011). While the Federal Circuit applies the
precedent of the regional circuit from which the district court
case arises for many procedural issues, it applies its own
precedent for all patent-related issues.   Lab. Corp. of Am.
Holdings v. Chiron Corp., 384 F.3d 1326, 1330 (Fed. Cir. 2004)
(citations omitted).   Although nominally a procedural issue, the
determination of whether a first-filed declaration of patent
rights suit should supersede a later-filed suit for patent

6

infringement bears directly on the issue of "national uniformity" in patent laws. See id. (citing Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 935 (Fed. Cir. 2004)).  Thus, Federal Circuit law governs SP Plus's injunctive motion. Id.

Under Federal Circuit precedent, when two actions that "substantially overlap" are filed in separate district courts, the forum in which the first action was filed is generally favored. See Futurewei Tech., Inc. v. Acacia Research Corp., 737 F.3d 704, 708 (Fed. Cir. 2013); Electronics for Imaging, Inc. v. Coyle (EFI), 394 F.3d 1341, 1347 (Fed. Cir. 2005).  This rule blossomed out of the "common-sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases."  In re Telebrands Corp., 824 F.3d 982, 984 (Fed. Cir. 2016); cf. In re Google Inc., 588 Fed.Appx. 988, 990 (Fed. Cir. 2014)(explaining how permitting parallel litigation leads to judicial waste if the parallel courts agree or conflicting decisions if the courts disagree).  However, the rule is not without exception.  Deference to the forum of the second-filed action is appropriate when demanded by "considerations of judicial and litigant economy, and the just and effective disposition of disputes."  Futurewei, 737 F.3d at 708 (citations omitted).  The decision whether to ultimately grant the injunction lies within the broad discretion of the trial court.  See Lab. Corp., 384 F.3d

7

at 1332; see also Int'l Rectifier Corp. v. Samsung Elec. Co., Ltd., 361 F.3d 1355, 1359 (Fed. Cir. 2004).

Here, SP Plus's declaratory action was certainly filed before Paylock's infringement action against PAM.[2] The threshold question for whether SP Plus can obtain a preliminary injunction, then, is whether substantial overlap exists between the suits.

In its briefings, Paylock distinguishes its infringement suit from SP Plus's declaratory action by emphasizing its breadth (nationwide infringement) and its target (PAM). According to Paylock, PAM learned of Paylock's self-release parking boot-related patents as early as 2010.   In spite of that purported knowledge, Paylock's argument goes, PAM has orchestrated or has attempted to orchestrate infringements of the 570 and 046 patents in municipalities across the country.   Paylock claims that, through its contract with New Orleans, PAM induced the City into implementing self-release booting practices which directly infringed upon the patents.   SP Plus, per Paylock, remained oblivious to its complicity in PAM's nefarious scheme until embroiling itself in this dispute.   Because SP Plus represents

---

[2] That SP Plus delayed service while the parties negotiated in the months following the filing of the complaint is irrelevant, given that Paylock was well aware of the suit pending against it. See Vishay Dale Elecs., Inc. v. KOA Corp., No. 4:04-CV-247-A, 2004 WL 1908244, at *1 (N.D. Tex. Aug. 24, 2004)(holding that failure to immediately serve a first-filed suit on the defendant does not alter first-filed status when defendant had notice of the suit).

merely the unwitting subcontractor in this imbroglio, Paylock asserts that PAM is vicariously liable for infringing activity undertaken by SP Plus. Thus, Paylock argues that defending itself against SP Plus in this declaratory action would fail to resolve what it identifies as the real issue: PAM's role as the "mothership" of nationwide infringement. Whereas the New Jersey action targets the puppeteer, Paylock's reasoning goes, the declaratory action centers on the actions of one puppet.

Paylock's whirlwind effort to convince the Court that the New Jersey action's scope and targeting of PAM render it fundamentally different from this action suffers from a litany of factual deficiencies and legal misapprehensions. For one thing, Paylock's portrayal of its New Jersey action as a suit targeting a far-flung infringement scheme stands in stark contrast from the language in its complaint. Even though Paylock alleges that PAM has "contacted" multiple municipalities regarding "booting operations," the complaint identifies only the New Orleans contract as utilizing self-release boots. Its factual allegations of infringement are based *entirely* on PAM's conduct in accordance with that contract and that contract alone—the same contract at the center of this declaratory action.

In its opposition to the motion for preliminary injunction and in its motion to dismiss, Paylock attempts to broaden the scope

of its complaint by providing evidence of a number of parking and booting-related contracts between PAM and municipalities such as New Jersey, New York, Atlanta, and others.  Paylock, however, supplies no evidence that any of these contracts provide for the use of, or in fact even mention, self-release booting systems. PAM, through a declaration from CEO Timothy Wendler, has denied: being a party to any contract requiring self-release booting operations aside from the one in New Orleans, or having any knowledge of its other subcontractors engaging in self-release booting.  PAM's denials, however, have only emboldened Paylock, which maintains that PAM has side-stepped the question of whether it has ever "offered" self-release booting operations to municipalities.   To  Paylock,  PAM's  steadfast  denials  are indicative that it has something to hide.

In essence, then, Paylock is asking this Court to infer from (1) PAM's involvement in a parking contract with the City under which alleged infringing conduct has occurred and (2) PAM's involvement in other parking and booting contracts that it has alleged that PAM is a "mothership" of nationwide infringement such that its New Jersey lawsuit is distinct and broader in scope than the declaratory action pending here.  The Court is under no duty to make such an inference and will not do so here.  Paylock's grandiose claims of PAM's nationwide treachery belie its New Orleans-focused and tepidly-worded complaint, as well its failure

10

to furnish any semblance of evidence (other than its own conviction) that PAM has facilitated infringing activity outside New Orleans. Like this declaratory action, Paylock's New Jersey action arises out of the self-release booting activity which occurred in this City from 2014 to 2016.

Moreover, the premise that Paylock can only bring suit against the alleged puppeteer (PAM) in New Jersey ignores a rather glaring reality: it can, and in fact *must*, assert its claims against PAM as counterclaims to SP Plus's action in this Court. SP Plus is seeking a declaration that the 570 and 046 patents are facially invalid or, in the alternative, that its operations did not constitute infringement. The Federal Circuit has clearly established that a claim for infringement constitutes a compulsory counterclaim to a declaration of non-infringement pursuant to Federal Rule of Civil Procedure 13(a). Capo, Inc. v. Dioptics Medical Products, Inc., 387 F.3d 1352, 1356 (Fed. Cir. 2004); Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc., 347 F.3d 935, 938 (Fed. Cir. 2003); Vivid Technologies, Inc. v. Am. Science & Engineering, Inc., 200 F.3d 795, 801 (Fed. Cir. 1999). In addition, under Federal Rule of Civil Procedure 19, Paylock is required to join any party without which "the court cannot afford relief among existing parties." If Paylock truly believes that PAM is pulling the strings and should be liable for any inadvertent infringement on the part of SP Plus in New Orleans, it must assert

11

its infringement claims against PAM as a counterclaim to SP Plus's declaration.[3]   Ultimately, then, the declaratory judgment action in this Court hinges on the resolution of the same legal questions as the New Jersey infringement action:  whether Paylock's patents are valid and infringed upon.  In light of these common issues -- clear overlap -- the first-to-file rule applies.

## II.

Given the first-to-file rule's applicability to this case, the Court may exercise its discretion to issue the preliminary injunction.   Indeed,  the  Court  should  enjoin  Paylock  from proceeding in New Jersey unless there is "sound reason that would make it unjust or inefficient to continue" this declaratory action. See Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 938 (Fed. Cir. 1993)("The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action. When the declaratory action

---

[3] During oral argument, counsel for Paylock insisted that Paylock cannot advance a counterclaim for infringement against SP Plus in this Court because SP Plus has denied that it performs all the steps of the claims.  Counsel for SP Plus, for its part, denied that SP Plus had ever represented that it does not perform each of the steps of the claims; indeed, SP Plus insisted that it had conceded as much in writing.  This quarrel will no doubt be resolved during discovery if not before.  What matters for the purposes of the issues raised by the present motions is that there is no dispute that Paylock may add PAM as a third-party defendant to this litigation and assert the same infringement claims it has advanced in New Jersey.

can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action."), *abrogated on other grounds by* Wilton v. Seven Falls Co., 515 U.S. 277 (1995); see also Micron Tech., Inc. v. Mosaid Techs., Inc., 518 F.3d 897, 903-04 (Fed. Cir. 2008)("[T]he more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a)."). Because the question of whether the Court should exercise its discretion to enjoin the patent infringement lawsuit in New Jersey is doctrinally entangled with the questions raised by Paylock's motion to dismiss, stay, or transfer this action, the Court turns to that analysis here.

28 U.S.C. § 2201(a) permits any interested party in an actual controversy to seek a declaration of rights from a court of the United States. Even when such an action satisfies all subject matter jurisdiction requirements, however, a district court may exercise the discretion to either hear or dismiss the declaratory judgment action. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)(underscoring the Act's "textual commitment to discretion"); Micron Tech., 518 F.3d at 903 ("The word 'may' within the language of the Declaratory Judgment Act means that a court has discretion to accept a declaratory judgment action in the first place.").

13

When the declaratory judgment action is one for a declaration of patent non-infringement, the Federal Circuit relies, as it does for the preliminary injunction determination, on Federal Circuit precedent. EFI, 394 F.3d at 1345-46. Only "well-founded reasons" can justify the dismissal of a declaratory action brought in response to a direct charge of patent infringement. Id. at 1345; Capo, Inc. v. Dioptics Med. Prods., Inc., 387 F.3d 1352, 1355 (Fed. Cir. 2004). The Federal Circuit has also noted that, "when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under [28 U.S.C.] § 1404(a)." Micron Tech., 518 F.3d at 904 ("the transfer analysis essentially mirrors the considerations that govern whether [the transferor court faced with hearing the declaratory judgment action] could decline to hear the case.").

    In lieu of citing to Federal Circuit precedent, Paylock invokes Fifth Circuit precedent and the factors deemed by the Supreme Court in Wilton v. Seven Falls Co. as pertinent to the determination of whether exercising jurisdiction over a declaratory action is proper.[4]   The substance of Paylock's

---

[4] Those factors include: (1) whether another action is pending in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether permitting the declaratory action to continue would grant the declaratory

14

dismissal argument, however, is easily adaptable to the controlling Federal Circuit standard. Paylock's "well-founded reasons" supporting its argument that this Court should decline to hear SP Plus's declaratory action include the comparative breadth of the New Jersey action; SP Plus and PAM's "gamesmanship" in bringing the suit while Paylock awaited a response to their February 4 letter; and the comparative convenience of the District of New Jersey as a forum.

   As discussed in detail above, Paylock's scope argument does not suffice to justify a dismissal of this declaratory action. In Micron Technologies, Inc., the Federal Circuit addressed whether a declaratory action for non-infringement should yield to a later-filed infringement action that includes additional parties and claims. 518 F.3d at 904. In rejecting that premise and reversing the district court's dismissal of the declaratory action, the circuit court cautioned against giving undue weight to a patent holder's contention that its infringement action is broader than a first-filed declaratory action:

> [T]hat the second-filed infringement action is
> broader than the first filed declaratory
> judgment action . . . carries little weight
> because a patent holder may often easily file
> an artificially broader infringement suit to
> avoid declaratory judgment jurisdiction. If,

---

plaintiff an inequitable advantage; (5) whether the federal court is a convenient forum for parties and witnesses; and (6) whether hearing the lawsuit serves judicial economy. 515 U.S. 277 (1995).

> as in this case, a patent holder could simply
> name another defendant or add a few additional
> claims to the later filed infringement, then
> the Supreme Court's more lenient standard for
> the declaratory judgment plaintiff would lose
> its primary intended effect. Accordingly,
> although the relationship between the two
> competing lawsuits remains a consideration,
> this consideration cannot be given undue
> weight because it is easily manipulated.

Id. Given the brittle nature of Paylock's breadth contention, this Court adheres to the Micron court's reasoning in affording that contention little weight in this analysis.

Nor does this Court find Paylock's complaints of SP Plus's chicanery particularly persuasive. In Electronics for Imaging, Inc. v. Coyle (EFI), 394 F.3d 1341 (Fed. Cir. 2005), a patent holder (Coyle) began threatening an alleged infringer (EFI) with legal action on an almost daily basis. When EFI eventually filed a declaratory action, Coyle sought its dismissal based on the suit's "anticipatory" nature. Id. at 1347. The district court sided with Coyle. The Federal Circuit reversed the district court's dismissal order. Because Coyle's constant threats had created a "cloud over EFI's business, shareholders, and customers," EFI was entitled to resolve the uncertainty wrought by Coyle in the form of a declaratory action. Id. In addition, the Federal Circuit held that the district court erred in finding the anticipatory nature of EFI's suit dispositive. Id. "While it is

true that a district court may consider whether a party intended to preempt another's infringement suit when ruling on the dismissal of a declaratory action," the Federal Circuit explained, ". . . we have endorsed that as merely one factor in the analysis." Id. at 1347-48.  Much more important to the EFI Court was the overall convenience of the respective forums. Id. at 1348.

While writing a letter to SP Plus's subcontractor might pale in comparison to Coyle's badgering of EFI, Paylock still shrouded SP Plus's self-release booting operations in a similar cloud of uncertainty.  See id. at 1346-47.  Since Paylock's February 4 letter threatened legal action if PAM -- which directed SP Plus to engage in self-release booting and obliges SP Plus to indemnify PAM in any legal action for damages caused by SP Plus -- continued to participate in self-release booting activity, SP Plus had the right to seek a declaration of its activity's legality in lieu of waiting for Paylock to sue or permanently ceasing a major aspect of its subcontract with PAM.  Moreover, as in EFI, the Court simply does not assign overwhelming significance to the fact that SP Plus filed this action in anticipation of a potential suit from Paylock instead of responding to Paylock's letter.  See id. at 1348.  Of far more import is the relative convenience of the respective forums, to which the Court now turns.

17

III.

As in Micron, this Court will assess forum convenience using the factors applicable to a request to transfer venue pursuant to 28 U.S.C. § 1404(a).  Given that the transfer analysis is not one unique to patent law, Fifth Circuit precedent governs this § 1404(a) evaluation. See In re TS Tech USA Corp., 551 F.3d 1315, 1319 (Fed. Cir. 2008); see also Lab. Corp., 384 F.3d at 1330.

"For the convenience of parties and witnesses, in the interest in justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The movant must establish "good cause" for the transfer by showing that the transferee venue is "clearly more convenient."  In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008)("Volkswagen II").  As the party effectively seeking transfer of this action to New Jersey (preferably by dismissing this action in favor of its New Jersey infringement suit), Paylock thus carries the burden of establishing good cause.  The Court enjoys broad discretion in determining whether or not the party seeking transfer has met the "good cause" burden.  Id. at 311 (citations omitted).

In Volkswagen II, the Fifth Circuit directed courts to weigh the private and public interest factors articulated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), to determine whether a

18

§1404(a) transfer serves the convenience of the parties or the interest of justice. <u>Volkswagen II</u>, 545 F.3d at 315. The private interest factors include:

> (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process to secure the attendance of witnesses;
> (3) the cost of attendance for willing witnesses;
> (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

The public interest factors are:

> (1) the administrative difficulties flowing from court congestion;
> (2) the local interest in having localized interests decided at home;
> (3) the familiarity of the forum with the law that will govern the case; and
> (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

<u>Id.</u> (quoting <u>In re Volkswagen AG</u>, 371 F.3d 201, 203 (5th Cir. 2004) ("<u>Volkswagen I</u>")). These factors are neither exhaustive nor exclusive. <u>Volkswagen II</u>, 545 F.3d at 315. No one factor carries dispositive weight. <u>Id.</u> (quoting <u>Action Indus. Inc. v. U.S. Fid. & Guar. Corp.</u>, 358 F.3d 337, 340 (5th Cir. 2004)).

A. The Private Interest Factors Strongly Weigh Against Transfer.

   (1) Relative Ease of Access to Sources of Proof

Courts consider the distance between the current location of the evidence and the trial venue in ascertaining the relative ease of access to sources of proof. <u>Broussard v. First Tower Loan, LLC</u>, 135 F.Supp.3d 540, 546 (E.D. La. 2015)(citing <u>MGT Gaming,</u>

19

Inc. v. WMS Gaming, Inc., 978 F.Supp.2d 647, 668 (S.D. Miss. 2013)).

Paylock contends that, since it stores all its documents pertaining to the 570 and 046 patents as well as self-release booting in general in New Jersey, this factor favors transfer. However, as discussed, both SP Plus's declaratory action and Paylock's infringement action depend primarily on the occurrence of infringing activity in the City of New Orleans. The salient records, correspondence and documentation, then, belongs almost exclusively to PAM, SP Plus, and the City - the parties involved in the alleged infringing activity. See In re Nintendo Co., Ltd., 589 F.3d 1194, 1199 (Fed. Cir. 2009)(quoting Genentech, 998 F.2d at 1345)("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). Those documents, as alleged by SP Plus and unrefuted by Paylock, are stored in New Orleans. Additionally, even though electronic discovery renders discovery of the documents at either venue a less cumbersome task than in yesteryear, this factor still bears on the analysis. See Volkswagen II, 545 F.3d at 315 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous"); St. Paul Surplus Lines Ins. Co. v. Ace American Ins. Co., No. 10-0714,

2010 WL 4875683, at *7 (W.D. La. Oct. 12, 2010) ("[T]he sources of proof requirement is a meaningful factor in the analysis despite the advent of recent technology."). Therefore, this factor weighs strongly in favor of maintaining venue in the Eastern District of Louisiana.

    (2)  Availability of Compulsory Process to Secure the Attendance of Witnesses

     Analysis under this factor favors absolute subpoena power, or the power to compel both trial and deposition testimony, over unwilling witnesses. See Volkswagen II, 545 F.3d at 315; U.S. United Ocean Servs., LLC v. Powerhouse Diesel Servs., 932 F. Supp. 2d 717, 730 (E.D. La. 2013). According to Federal Rule of Civil Procedure 45(c)(1), a court may enforce a subpoena to compel attendance of nonparty witnesses at trials, hearings or depositions only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). A subpoena may also compel attendance of a party or party officer only within the state "where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(B)(i). Resolving a long-lingering circuit split, the Advisory Committee clarified in its note to the 2013 amendment to Rule 45 that, for employee party witnesses, the new rule "does not authorize a subpoena for trial to require a party or party officer to travel more than 100 miles unless the party or party

officer resides, is employed, or regularly transacts business in person in the state." Fed. R. Civ. P. 45(c) advisory committee's note to 2013 amendment.

Paylock asserts that personnel "familiar with the development of commercial embodiments of the inventions, income, costs, profits, marketing, and commercial success," as well as the four inventors, all reside more than 100 miles from the Eastern District of Louisiana and can elude compulsory process here. Absent from Paylock's argument is an acknowledgment that analysis under this factor focuses on the availability of subpoena power over *unwilling* witnesses. See Volkswagen II, 545 F.3d at 315; U.S. United Ocean Servs., 932 F. Supp 2d at 730-31; Laitram Corp. v. Hewlett-Packard Co., 120 F.Supp.2d 607, 609-10 (E.D. La. 2000). SP Plus has presented a declaration from the City's Director of Public Works indicating that City employees will not willingly testify at Paylock's infringement action. Paylock, by contrast, presents no evidence that either the personnel it names in the briefings[5] or the inventors -- three of whom also reside outside the range of the District of New Jersey's subpoena power -- are unwilling to testify. This factor, therefore, also weighs against transfer.

---

[5] In fact, the suggestion that employees named by a company as vital cogs to that company's case would refuse to testify stretches credulity.

(3)  The Cost of Attendance for Willing Witnesses

In Volkswagen I, the Fifth Circuit adopted the "100-mile rule," under which the inconvenience posed to a witness increases in direct proportion to every mile beyond 100 miles that the witness must travel.  371 F.3d at 204-05.  As the Volkswagen I court reasoned, "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  Id. at 205.  Courts typically consider the cost of attendance for both party and nonparty witnesses.  See Broussard, 135 F. Supp. 3d at 547 (citing MGT Gaming, 978 F. Supp. 2d at 672).  In general, however, courts prioritize the convenience of key, non-party witnesses.  Id.; Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000).  Although the cost of attendance for employee witnesses is entitled to less weight, it is not fully discounted.  U.S. United Ocean Servs., 932 F. Supp. 2d at 733.

In analyzing this factor, courts should assess the relevance and materiality of a witness's testimony but must take into account all potential relevant and material witnesses "irrespective to their centrality to the issues raised in a case or their likelihood of being called to trial."  See MGT Gaming, 978 F. Supp. 2d at 672; see also In re Genentech, 566 F.3d 1338, 1343 (Fed. Cir. 2009)

23

("Requiring a defendant to show that the potential witness has more than relevant and material information . . . or risk facing denial of transfer on that basis is unnecessary.").

Paylock correctly surmises that proceeding with the declaratory action in this venue will impose a burden on its employees residing in New Jersey, as well as the inventors. Still, more witnesses -- including SP Plus, PAM, and the "key, non-party witnesses" from the City familiar with the self-release booting activity conducted in accordance with the contract -- would suffer inconvenience by having to travel to New Jersey to testify. Just as the documentary evidence belonging to the alleged infringers and the City carry the most weight, the convenience of witnesses whose testimony will spotlight the nature of the alleged infringing activity necessarily supersedes the convenience of Paylock's witnesses and the inventors.[6]   See In re Genentech, 566 F.3d at 1344 (reasoning that the third factor supported transfer of venue to the Northern District of California, where the defendant alleged infringer was based in and several key witnesses resided in San Francisco, despite the inconvenience posed to six inventors and foreign witnesses); In re TS Tech, 551 F.3d at 1320 (holding that the district court afforded too little weight to the inconvenience

---

[6] Three of whom (residing in Oregon, California, and Florida) would also incur substantial travel, time, and lodging costs testifying in New Jersey.

imposed on key witnesses living in Michigan, Ohio, and Canada by having to attend trial in Texas).  The Court finds that this factor also militates against transfer.

(4)  All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

Neither party presents an argument under the fourth § 1404(a) private factor.  Accordingly, the Court regards this factor as neutral.

B. The Public Interest Factors Weigh Against Transfer.

(1) The Administrative Difficulties Flowing From Court Congestion

According to the most recently-released Federal Court Management Statistics, the Eastern District of Louisiana received 16,475 filings between June 2015 and June 2016. U.S. COURTS, FEDERAL COURT MANAGEMENT STATISTICS (June 30, 2016).  The median time from filing to disposition for civil cases is 8.5 months. Id.  The District of New Jersey received 9,609 filings last year, and its median time from filing to disposition is 8 months.  Id. Accordingly, this factor is relatively neutral.

(2) The Local Interest in Having Localized Interests Decided at Home

The § 1404(a) local interest factor strongly weighs against transfer when the transferee venue's relationship to the case is attenuated or nonexistent. See Volkswagen I, 371 F.3d at 206 (citing Gilbert, 330 U.S. at 508-09); Johnson v. Union Pac. R.R.

25

Co., No. 15-3558, 2015 WL 7777983, at *5 (E.D. La. Dec. 2, 2015);
Davidson v. Weyerhaeuser Corp., No. 11-0636, 2011 WL 5402362, at
*5 (W.D. La. Oct. 4, 2011).  That Paylock is headquartered in New
Jersey represents the sole connection between the District of New
Jersey and this case.  The alleged infringement serving as the
lifeblood of both SP Plus's declaratory and Paylock's infringement
actions occurred entirely in New Orleans, pursuant to a prime
contract between the City and PAM and subcontract between PAM and
SP Plus.

This Court, for reasons articulated above, rejects the
implication that the New Jersey possesses even a sliver of the
degree of local interest in this case as New Orleans.  Paylock
cannot tout the existence of PAM's parking-related contracts with
New Jersey and the spectacle it has made of portraying PAM as a
"mothership" of nationwide infringement as serious local interest
arguments.  In fact, even had Paylock supplied evidence suggestive
of other instances of self-release booting practices, or
buttressed the language of its complaint regarding allegations of
nationwide infringement, the District of New Jersey would likely
have lacked a sufficient local interest.  See In re Nintendo, 589
F.3d at 1198 (spurning the argument that a district's citizens had
a more substantial local interest than the citizens of the alleged
infringer's home venue simply because infringing products may have

found their way there).  Accordingly, the Court finds that this factor weighs heavily against transfer.

   (3) The Familiarity of the Forum with the Law that Will Govern the Case; and the Avoidance of Unnecessary Problems of Conflict of Laws [or in] the Application of foreign law.

Because this Court dismisses SP Plus's state law cases for reasons explained *infra*, federal law would govern both actions. There are no issues of foreign law.  Therefore, the final two public interest factors are inapplicable.

In light of the foregoing analysis, the Eastern District of Louisiana represents the clearly more convenient forum to settle the central disputes in this patent litigation.  Accordingly, the Court declines to dismiss or transfer the federal patent law claims of SP Plus's declaratory action and is persuaded that Paylock's New Jersey action should be enjoined from further proceeding.[7]

IV.

Paylock requests that the Court dismiss SP Plus's state law claims pursuant to Rule 12(b)(6).  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242,

---

[7] In reaching this conclusion, the Court pretermits Paylock's arguments for staying the declaratory action.

247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a

right to relief above the speculative level, on the assumption
that all the allegations in the complaint are true (even if
doubtful in fact)." Twombly, 550 U.S. at 555 (citations and
footnote omitted). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility
standard is not akin to a 'probability requirement,' but it asks
for more than a sheer possibility that a defendant has acted
unlawfully."). This is a "context-specific task that requires the
reviewing court to draw on its judicial experience and common
sense." Id. at 679.

SP Plus alleges that Paylock engaged in tortious interference
with its contract and business relations and violated LUTPA in
violation of Louisiana law. The Federal Circuit has held that a
patent holder's claims under federal patent law preempt an alleged
infringer's claims for state-law tort liability unless the alleged
infringer can demonstrate that the allegations were made in bad
faith and are "objectively baseless." Matthews Intern. Corp. v.
Biosafe Engineering, LLC, 695 F.3d 1322, 1332 (Fed. Cir. 2012);
Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254,
1260 (Fed. Cir. 2008)("Federal patent law...preempts state-law
tort liability when a patentee in good faith communicates
allegations of infringement of its patent"); Globetrotter

Software, Inc. v. Elan Comput. Grp., Inc., 362 F.3d 1367, 1377
(Fed. Cir. 2004)("[F]ederal patent law preempts state-law tort
liability for a patentholder's good faith conduct in
communications asserting infringement of its patent and warning
about potential litigation"). In demonstrating an infringement
claim's objective baselessness, the party raising the tort claim
must establish that "no reasonable litigant could realistically
expect success on the merits." Globetrotter, 362 F.3d at 1376
(quoting Prof. Real Estate Inv'rs, Inc. v. Columbia Picture Indus.,
Inc., 508 U.S. 49, 60 (1993)).

    SP Plus's complaint does not allege the components of bad
faith requisite for its state law claims to survive preemption.
Given that Paylock is the owner of two patents which involve
technology and design elements of self-release booting systems,
its sending of the February 4 letter to PAM requesting the
cessation of self-release booting activity hardly rises to the
level of "objective baselessness" needed.  In its reply to
Paylock's motion to dismiss, SP Plus invokes Zenith Elecs. Corp.
v. Exzec, Inc., in which the Federal Circuit held that, "if the
patentee knows that the patent is invalid, unenforceable, or not
infringed, yet represents to the marketplace that a competitor is
infringing the patent, a clear case of bad faith representations
is made out."). 182 F.3d 1340, 1355 (Fed. Cir. 1999). However,
while SP Plus alleges in its declaratory action that the 570 and

046 patents are facially invalid, it fails even to allege as a matter of fact that Paylock sent the February 4 letter *knowing* that it was attempting to enforce an invalid patent, or that it otherwise could not reasonably expect to succeed on the merits of its infringement allegations.

In merely alleging that Paylock transmitted a letter requesting compliance with its patents, SP Plus fails to allege that Paylock exhibited the objective bad faith that can subject it to state law tort liability.   Because SP Plus has failed to sufficiently plead the bad faith element necessary to support its state law claims in the face of preemption, its state law claims must be dismissed.   SP Plus has requested leave to amend its tort claims if the Court finds them technically insufficient.[8]   If SP Plus in good faith believes that it would not be futile for it to seek leave to amend its state law tort claims (if it believes that it can sufficiently allege bad faith on the part of Paylock), it may file a motion for leave to amend its tort claims consistent with the Local Rules.   As always, and in so doing, counsel should be mindful of 28 U.S.C. § 1927.

## Conclusion

Based on the foregoing analysis, the Court finds that it should exercise its jurisdiction and that an injunction should

---

[8] Counsel for SP Plus reiterated its request for leave to amend if the Court dismissed its state law claims as preempted.

issue, enjoining Paylock's infringement action against PAM in the District of New Jersey in favor of SP Plus's declaratory judgment action in this Court.   Accordingly, IT IS ORDERED: that the plaintiff's motion for a preliminary injunction is GRANTED. Paylock is hereby enjoined from pursuing its patent case in the District of New Jersey, captioned <u>IPT LLC d/b/a Paylock IPT LLC v. Professional Account Management, LLC</u>, No. 3:16-cv-5200.   IT IS FURTHER ORDERED: that the defendant's motion to dismiss, stay, or transfer this action is GRANTED in part and DENIED in part: the motion to dismiss is GRANTED as to SP Plus's state law claims (insofar as SP Plus has failed to plead the requisite "bad faith" element of its state law claims) and DENIED as to its request that the Court dismiss, stay, or transfer the federal patent law claims.

New Orleans, Louisiana, December 12, 2016

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE